IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

LEONARD RRAPAJ,

*Defendant.*

Case No. 25-40036-TC-RES

## MOTION TO RETURN PROPERTY

Pursuant to Federal Rule of Criminal Procedure 41(g), Defendant Leonard Rrapaj moves the Court to return property seized from his home and business on June 6, 2025, which is not pertinent to the sole charge pending against him and unnecessary for the government to retain this long after the search. The overzealous raid swept far too broadly and resulted in Defendant being deprived of property he lawfully possessed and Defendant's business being deprived of property necessary to its ongoing operations.

## MEMORANDUM IN SUPPORT

### Background

On June 4, 2025, Federal Bureau of Investigation Special Agent Trisha McCormick requested a warrant to search Defendant's business and residence. The affidavit submitted in support claimed there was probable cause to believe a lengthy list of crimes had been committed and that evidence of these crimes would be found on the premises.

1

The affiant claimed probable cause could be found in the allegations supplied by three confidential human sources and one confidential source: CHS-1, CHS-2, CHS-3, and CS-1. CHS-1, CHS-2, and CS-1 were all former sources/informants by the time the affidavit was drafted. When active, CHS-1 was paid for information. CHS-2 has a lengthy rap sheet, including a conviction for manufacturing counterfeit obligation and arrest for a false insurance claim, but the affidavit still asserted that "[i]nvestigators are unaware of instances where CHS-2 had been untruthful or misleading." CS-1 was deactivated due to violating DEA policy.

With the exception of CHS-3, the informants, sources, and witnesses had not been interviewed by the affiant with respect to an active investigation. Rather, 52 pages of the affidavit were devoted to describing information gleaned from decades old court filings (none demonstrating that Defendant had committed a crime) and several years' old proffers and interviews conducted by other law enforcement officers.

The majority of the allegations were more than three years old at the time of the warrant application. Some were more than a decade old.

The only source who had interacted with Defendant or had been to his business or home in the three years preceding the affidavit was CHS-3, whose decade-long romantic relationship with Defendant had recently ended and who was being paid for the information she provided. While the affidavit disclosed that CHS-3 had a pending DUI charge, it did not disclose her serious substance abuse issues or recent commitment to a rehabilitation facility. While the affidavit disclosed that CHS-3 had

self-reported sharing her Diazepam prescription with a significant other, it did not disclose that Diazepam is often used to treat symptoms of alcohol withdrawal. The affidavit did not disclose that CHS-3 had also been prescribed Quetiapine (brand name: Seroquel), an antipsychotic medication used to treat mental health conditions such as schizophrenia and bipolar disorder; nor did it address whether CHS-3's mental health conditions were being adequately treated or controlled at the time of her interview. There was no indication the affiant sought information to assess CHS-3's credibility or motivations for inculpating Defendant in criminal activity.

The majority of CHS-3's claims related to events alleged to have occurred years in the past, were speculative (i.e., cited her "belief" that something was true without personal knowledge), or were too generalized to be actionable. The specific information she provided did not supply probable cause that the target crimes had occurred or were occurring. For example:

- CHS-3 claimed Defendant made loans to advance illegal activities, but the only specific loan CHS-3 was aware of involved Defendant loaning $10,000 to a named friend "for legal purposes." Affidavit ¶ 143.a.

- CHS-3 claimed Defendant possessed illegal fully automatic weapons, but the only allegedly "fully automatic" weapon she described was one with a bump stock.[1] Affidavit ¶ 145.e.ii.

---

[1] Pursuant to *Garland v. Cargill*, 602 U.S. 406 (2024), bump stocks are not illegal and a firearm equipped with a bump stock is not fully automatic.

Being stale, untrustworthy, and nonspecific, the criminal allegations in the affidavit did not support probable cause to believe Defendant was actively engaged in a crime or that evidence of a crime would be found at the target locations in June 2025.

Despite the affidavit's insufficiencies, however, the warrant issued, and FBI agents executed a search of Defendant's business and residence on June 6, 2025.

During the search, agents appeared to take measures to avoid recording the entirety of their conduct. Apparently cognizant that the body camera footage would later be reviewed by an attorney, the affiant warned another agent to "remind people that you are hot" while pointing to a body camera. Both the affiant's audio/video and another agent's audio/video recording appear to be turned off for periods of time before turning back on. At one point, the affiant can be heard instructing the greater group involved in the search, "Cameras off."

The search was undertaken with unnecessarily aggressive tactics. Some seemed to be an apparent effort to punish Defendant for requesting an attorney. Specifically, although video shows Defendant repeatedly offering to open and provide access to whatever the agents wanted to search, agent Patrick Salmon declined, saying that because Defendant invoked his right to counsel he would not allow Defendant to provide the keys and codes to access items on the premises. Agents then proceeded to (unnecessarily) smash Defendant's business ATM, cut the doors off of safes, smash a safe door, damage cash registers, smash the window to Defendant's car and pry open the trunk, seize surveillance system items by yanking them out of the walls and cutting wires, and damage door frames.

4

 

A smashed ATM.                                 A safe with a door cut off.



A smashed safe door.




The shattered window of a car.          A scratched car with trunk pried open.



Damaged cash registers.



Surveillance system with cut wires.     Camera wires pulled and cut.



Damaged door frame.

Despite claiming there was probable cause to believe Defendant had committed the numerous target crimes listed in the search warrant affidavit at the time it was submitted, the only crime charged after the search was a single violation of 18 U.S.C. 922(o).

The government remains in possession of the following items entirely unrelated to the only pending charge:

- U.S. Currency;

- Legally possessed firearms and ammunition (Defendant had a concealed carry permit at the time of the warrant's execution);

- Surveillance equipment; and

- Watches and jewelry.

**Arguments & Authorities**

**I.    Rule 41 contemplates judicial action that will respect both possessory and law enforcement interests.**

Fed. R. Crim. P. 41(g) permits "[a] person aggrieved . . . by the deprivation of property" to move for its return and authorizes a court to grant the request subject to the imposition of "reasonable conditions to protect access to the property and its use in later proceedings."

As the Advisory Committee Notes explain, the Rule "contemplates judicial action that will respect both possessory and law enforcement interests." Fed. R. Crim. P. 41, Advisory Committee Notes on 1989 Amendments. It therefore balances an

individual's interest in the use of his property against the government's interest in its continued retention. For example,

> If the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable. But, if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable.

*Id.*

This interest balancing approach recognizes a private individual's possessory interest even when the government asserts that the property is or may be relevant to ongoing or contemplated investigations and prosecutions. In such a scenario, the government's interest often can be "equally served by photographing the evidence and recording serial numbers." *United States v. Lamplugh*, 956 F.Supp. 1204, 1208 (M.D. Pa. 1997); *see also* Fed. R. Crim. P 41, Advisory Committee Notes, 1989 Amendments ("The amended rule recognizes that reasonable accommodations might protect both the law enforcement interests of the United States and the property rights of property owners and holders. In many instances documents and records that are relevant to ongoing or contemplated investigations and prosecutions may be returned to their owner as long as the government preserves a copy for future use.").

## II.    The government should be ordered to return the currency; lawfully possessed firearms, magazines, and ammunition; security system equipment; and timepieces and jewelry.

**Currency.** Although Defendant operates a lawful, cash-based business that is properly registered with the Kansas Secretary of State, agents seized all currency on site during the warrant's execution, including currency located in the business's cash

registers and ATM. Months after the raid, no charges have been filed that would justify the continued detention of this currency and no forfeiture action is pending.

In *608 Taylor Avenue*, 584 F.2d 1297 (3d. 1978), the government searched the defendant's premises for gambling contraband. During the search, the government seized approximately $12,000 in currency. *Id.* at 1299. Before any criminal indictment or forfeiture proceedings being brought against the defendant, he moved for the return of the currency. *Id.* While the Third Circuit recognized that the government's right to seize property during an investigation, it emphasized that *retention* of that property must be reasonably related to the government's interest in the property. *Id.* at 1303. If the government's sole interest in retaining the currency is for its use as evidence, the court should consider whether this purpose would be equally well served by alternatives such as photographing the evidence and recording serial numbers. *Id.* at 1304. If the property is being held subject to possible forfeiture, the law requires that such an action be commenced promptly. *Id.*

More specifically, 18 U.S.C. 983(a) requires that the government commence or give notice of its intent to commence any civil forfeiture action within 60 days of seizure unless the government has obtained a criminal indictment containing an allegation that the property is subject to criminal forfeiture in that same time period. It has been more than 60 days since the currency was seized, and no forfeiture notice has been given and no forfeiture action has commenced.

To the extent the government may assert that the currency has some evidentiary value with respect to ongoing or contemplated investigations and/or

10

prosecutions, the necessary evidence can be adequately preserved by photographing and/or photocopying the currency and documenting the serial numbers. *See Lamplugh*, 956 F.Supp. at 1208 (ordering that currency unrelated to pending charges be released to moving defendants). But "the government may not by exercising its power to seize, effect a De facto forfeiture." *608 Taylor*, 584 F.2d at 1302.

Because the government does not have an interest in retaining the currency, it should be returned.

**Firearms and ammunition.** Of the many firearms, magazines, and ammunition federal agents seized from Defendant's property, only one serves as the basis for the criminal charge pending against Defendant. The rest have no value or purpose in supporting the single pending count, and they are not the subject of a criminal or civil forfeiture. Defendant requests that the firearms, magazines, and ammunition he lawfully possessed before they were seized be released to his designee so that he may exercise his valid interest in them while respecting his pretrial conditions.

Even convicted felons are entitled to have the firearms they lawfully owned before their felony convictions released to the custody of another so that they do not lose the value of their property interests. *See United States v. Zaleski*, 686 F.3d 90 (2d. 2012) (ordering release of convicted felon's weapons—including guns, ammunition and magazines worth over $100,000—to a federally licensed gun dealer so defendant could receive the net financial value of the items); *United States v. Miller*, 588 F.3d 418 (7th Cir. 2009) (holding that the United States must give a defendant some option to realize the benefit of his property interest in firearms

11

lawfully possessed before his felony conviction, such as "having a trustee sell or hold the guns").

Again, to the extent the government may assert that the firearms, magazines, or ammunition have some evidentiary value with respect to ongoing or contemplated investigations and/or prosecutions, the necessary evidence can be adequately preserved by photographing the items and documenting the serial numbers. *See Lamplugh*, 956 F.Supp. at 1208. But the government has now had more than enough time to examine and trace[2] the weapons seized and, with the exception of the one item identified in the Complaint, apparently found no basis to assert that the weapons are contraband or necessary to prove a crime.

Rather than being subjected to a de facto forfeiture without due process, Defendant's firearms should be released to a licensed and authorized storage agent.

**Security system equipment.** Like many businesses, Defendant's business used a video security system to record goings on at the establishment. Despite information indicating that the system's memory was wiped every week (to maintain data storage capacity) and the lack of any information indicating that evidence of criminal activity would have been recorded in the days immediately preceding the search, agents seized the entirety of the video security system—including the cameras themselves. While the government may be entitled to retain items that contain non-removable data in the even that data contains evidence relevant to the charged crime (if any), it

---

[2] The ATF generally completes "routine" traces within seven to ten days.
https://www.atf.gov/firearms/national-tracing-center

should be required to return security system components that do not contain any such data (such as, for example, the cameras).

**Timepieces and jewelry.** After the search, Defendant's valuable jewelry and timepieces, including two Rolex watches Defendant received from his father, were missing. No timepieces or jewelry were accounted for in the search warrant inventory provided to defense counsel.

These items are not pertinent to the pending charge, and more than 60 days have passed without the government giving notice of intent to forfeit the property. They, too, should be returned.

## III. Reasonable conditions will protect access to the property for any necessary use in later proceedings.

Defendant proposes that the following conditions are reasonable and appropriate:

- Government agents may have a period of 30 days from the order to complete any necessary documentation to preserve evidence not yet recorded with respect to the items ordered to be returned.

- The firearms shall be released to an authorized storage facility so that Defendant remains in compliance with his pre-trial conditions of release. For example, Hold My Guns® is a 501(c)(3) nonprofit organization that connects gun owners with Federal Firearms Licensees (FFLs) across the United States to provide voluntary firearms storage during times of crisis or personal need.

13

Respectfully submitted,

Joseph, Hollander & Craft LLC
*Attorneys for Defendant*

By:   <u>/s/Christopher M. Joseph</u>
Christopher M. Joseph, #19778
5200 Bob Billings Parkway, Suite 201
Lawrence, Kansas 66049
(785) 856-0143 Phone
(855) 955-1318 Fax
cjoseph@josephhollander.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

<u>/s/ Christopher M. Joseph</u>
Christopher M. Joseph

14