IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br>v.<br><br>LEONARD RRAPAJ,<br><br>　　　　　　Defendant. | Case No. 25-40036-TC-RES |

MOTION TO DISMISS INDICTMENT
On Second Amendment Grounds

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), Defendant Leonard Rrapaj moves the Court to dismiss the Indictment because 18 U.S.C. 922(o)'s prohibition on the mere possession of machinegun conversion devices violates the Second Amendment. The defense acknowledges that *United States v. Morgan*, Case No. 24-3141, --- F.4th ---, 2025 WL 2502968 (10th Cir. Sept. 2, 2025), concludes otherwise. We raise the issue for preserve it for further review.

MEMORANDUM IN SUPPORT

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) permits a defendant to move to dismiss a charge for failure to state an offense. One basis for such a motion is that the charged statute is unconstitutional. *United States v. Herrera*, 51 F.4th 1226, 1284 (10th Cir. 2022).

1

The Second Amendment to the United States Constitution codified the fundamental right to keep arms and carry the tools to protect our homes and our nation, stating:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

To the extent 18 U.S.C. 922(o) bans the mere possession of a machinegun conversion device, it violates the Second Amendment's prohibition on infringement of the right to keep arms.

I. **Defendant, an individual legally eligible to possess weapons, has been brought before this Court on the charge that he merely possessed a machinegun conversion device.**

Defendant has been charged with a crime for an alleged violation of 18 U.S.C. 922(o) by possessing a machinegun conversion device. Doc. 1. Subsection 922(o) of Title 18 states:

> (o)(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
> (2) This subsection does not apply with respect to--
> (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or
> (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect [May 19, 1986].[1]

The term "machinegun," as used in Section 922(o), means:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame

---

[1] Subsection 922(o) of Title 18 took effect on May 19, 1986, as part of the Firearms Owners' Protection Act, Public Law No. 99-308 (05/19/1986).

or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. 5845(b); 18 U.S.C. 921(a)(24).

No characteristic or prior conduct disqualifies Defendant from lawfully owning, using, or possessing weapons. There is no charge that Defendant terrorized anyone with the device or used against anyone. Rather, Defendant has been brought before this Court for merely possessing a "part" of a weapon.

## II. The Second Amendment protects Defendant's right to possess a machinegun conversion device.

"[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 17 (2022). A regulation that imposes or infringes on such conduct may withstand constitutional objection only if the government can demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. *Id.* at 24.

### A. The plain text of the Second Amendment protects the possession of a machinegun conversion device.

In *District of Columbia v. Heller*, the United States Supreme Court thoroughly examined the meaning of the Second Amendment's plain text to conclude that it "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." 554 U.S. 570, 582 (2008). Regarding the founders' definition of an arm, *Heller* stated:

> The 18th-century meaning is no different from the meaning today. The 1773 edition of Samuel Johnson's dictionary defined "arms" as "[w]eapons of offence, or armour of defence." 1 Dictionary of the English Language 106 (4th ed.) (reprinted 1978) (hereinafter Johnson). Timothy Cunningham's important 1771 legal dictionary defined "arms" as "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." 1 A New and Complete Law Dictionary; see also N. Webster, American Dictionary of the English Language (1828) (reprinted 1989) (hereinafter Webster) (similar).
> . . .
> Although one founding-era thesaurus limited "arms" (as opposed to "weapons") to "instruments of offence *generally* made use of in war," even that source stated that all firearms constituted "arms." 1 J. Trusler, The Distinction Between Words Esteemed Synonymous in the English Language 37 (3d ed. 1794) (emphasis added).

*Id.* at 581-582. The Supreme Court reaffirmed that ruling in *Bruen*, 597 U.S. at 28.

A machinegun conversion device is indisputably an arm one can keep and bear, a weapon of offense (and defense), and a thing a man can take into his hands and use to cast at or strike another. It is well know that machineguns are instruments *generally* made use of in war. And the handguns that are converted into machineguns by attachment of conversion devices are the quintessential weapons protected by the Second Amendment. *Bruen*, 597 U.S. at 10, 47.

For these reasons, in *United States v. Bridges*, the Sixth Circuit Court of Appeals recently concluded that the Second Amendment's plain text protects the possession of a handgun modified for fully automatic fire, stating: it "is undoubtedly an 'Arm[ ]' that one can 'keep and bear.'" Case No. 24-5874, --- F.4th ---, 2025 WL 2250109, *5 (Aug. 7, 2025). The Sixth Circuit Correctly applied *Bruen*'s Step 1 by limiting its analysis to the plain text of the Second Amendment and reserving consideration of matters like the "dangerous and unusual doctrine" for Step 2 of the

4

*Bruen* test, which inquires into the scope of historically permitted regulations. Concurring in the judgment, the Honorable John Nalbandian explained:

> Analysis of the "dangerous and unusual weapons" doctrine belongs at Step 2, where the burden belongs to the government. The doctrine speaks to the scope of the right, as historically understood. It does not say that dangerous and unusual arms are not arms.
> 
> Still, some courts have concluded otherwise. They have ruled at Step 1 that the history of "dangerous and unusual weapons" means that such weapons aren't even "arms" within the Second Amendment's meaning. *See Bianchi*, 111 F.4th at 447–48; *Bevis v. City of Naperville*, 85 F.4th 1175, 1192–96 (7th Cir. 2023). This analysis does not faithfully implement *Bruen*'s instructions. Step 1 concerns the *semantic content* of the Second Amendment's text. It's about what triggers the right at all. Step 2 concerns the *historical scope* of the right, once we know what implicates the right.
> 
> To be sure, perhaps we may need some "minimal historical context" to understand the text's semantic meaning. Alicea, *supra* (manuscript at 10). We consult eighteenth-century dictionaries, for example, not modern ones, to uncover the constitutional definition of "arms." *See Heller*, 554 U.S. at 581–84, 128 S.Ct. 2783. But Step 1 is primarily a linguistic enterprise, not a historical one. History and tradition determine the scope of the right at Step 2.
> 
> Dangerous and unusual weapons are plainly "arms" that trigger Second Amendment scrutiny. Bowie knives and (*arguendo*) machineguns are "[w]eapons of offence," "thing[s] that a man … takes into his hands, or useth in wrath to cast at or strike another." *Id.* at 581, 128 S.Ct. 2783 (internal quotation marks omitted). So they pass Step 1. Now, Congress might be able to specially regulate (or ban) them based on history and tradition, but we determine that point—the right's scope—at Step 2. And just because we regulate (or ban) certain arms doesn't mean that they aren't arms to begin with. They're "unprotected not because they aren't 'Arms' under the plain text, but because they fall within the historical tradition of regulating dangerous and unusual weapons." *Bianchi*, 111 F.4th at 496 (Richardson, J., dissenting). And "[t]he nature of an object does not change based on its popularity," even if "the regulation of that object can." *Bevis*, 85 F.4th at 1209 (Brennan, J., dissenting).

*Bridges*, 2025 WL 2250109, *25 (Nalbandian, J., concurring). This is the proper analysis: Because a machinegun conversion device is an arm one can keep and bear

5

(rather than a tank, a bomber, or trebuchet (not bearable), or eggplant, chicken, or television (not arms)), it is presumptively protected by the Second Amendment. *See id.* at *11. The validity of 18 U.S.C. 922(o)'s prohibition on the possession of machinegun conversion devices therefore turns on whether the government can establish that the regulation is consistent with this Nation's historical tradition of firearm regulation.

The defense is aware that the Tenth Circuit Court of Appeals has declared that machineguns and machinegun conversion devices are not "arms" protected by the plain language of the Second Amendment because they are not in common use for a lawful purpose. *Morgan*, 2025 WL 2502968. The defense urges reconsideration of the *Morgan* holding and all Tenth Circuit case law applying a similar analysis because it takes the *Bruen* test out of order.

### B. The government cannot meet its burden to prove that 922(o)'s total ban on machinegun conversion devices is consistent with the Nation's history of firearm regulation.

For 922(o)'s prohibition on the mere possession of a machinegun conversion device to pass constitutional muster, the government must demonstrate that the prohibition "is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

At this point, the Sixth Circuit joins the Tenth Circuit in concluding that 922(o) does not offend the Second Amendment—concluding that 922(o)'s ban on machinegun possession is consistent with the Nation's historical tradition of firearm regulation because machineguns are dangerous and unusual weapons not typically possessed by

law-abiding citizens for lawful purposes. *Bridges*, 2025 WL 2250109, at *9. This is the wrong result.

First, as Judge Nalbandian explained in his concurrence,

> Firearms regulations come in many flavors. Some regulate *who* can bear arms. Some regulate *how* you can bear arms. Some regulate where you can bear arms. *See United States v. Williams*, 113 F.4th 637, 643 (6th Cir. 2024) (law banning felons from owning guns); *Bruen*, 597 U.S. at 9–11, 142 S.Ct. 2111 (law regulating public carry); *Heller*, 554 U.S. at 626, 128 S.Ct. 2783 (discussing "sensitive places," like schools and government buildings).
> Today's case presents a different kind of regulation: *What* arms can you keep? May the government ban certain bearable weapons? If so, which ones?

*Id.* at *12. It is important to keep this in mind because "[t]he historical record before 1800 offers no support for a ban on any class of arms." *Id.* at *15. Furthermore,

> As for machineguns specifically, until 1986 they were lawfully owned by anyone who could purchase one. And don't forget—machineguns are still lawfully owned by some private citizens today. The statute grandfathers in automatic firearms owned before the ban took effect. 18 U.S.C. § 922(o)(2)(B).
> In fact, the 1986 machinegun ban was the first time the federal government ever enacted a nationwide ban on any kind of weapon. See Stephen Halbrook, The Power to Tax, the Second Amendment, and the Search for Which "'Gangster' Weapons" to Tax, 25 Wyo. L. Rev. 149, 164 (2025). That's nearly 200 years from the Second Amendment's ratification.

*Id.* at 21. While many machinegun cases have considered historical laws prohibiting <u>carrying</u> dangerous and unusual weapons,

> [A]t English and American common law, and for half a century after the Founding, no one *banned* dangerous and unusual weapons; the law simply regulated methods of public carry. . . .
> The "unusual" doctrine wasn't originally developed or designed to fit with prohibitions on possession. Forcing it to fit is a little like mixing oil and water.

*Id.* at 23-24.

Second, both the Tenth and the Sixth Circuit Courts of Appeals improperly relied on dicta in *Heller* stating that it would be startling to conclude the National Firearms Act's regulation of machineguns was unconstitutional. *See* 554 U.S. at 624. But, as Judge Nalbandian notes in his *Bridges* concurrence,

> the National Firearms Act is a different statute than the machinegun ban. Congress passed the National Firearms Act in the '30s under its taxing power. See National Firearms Act of 1934, ch. 757, §§ 3–5, 48 Stat. 1236, 1237–38. The statute created registration requirements for privately owned machineguns and imposed a tax on any transfer or sale of a machinegun. The statute did not ban machineguns. Congress banned them in a different, later statute, in a 1986 amendment to the Gun Control Act of 1968, a criminal law passed under the interstate commerce power. See Act of May 19, 1986, § 102, 100 Stat. 449, 453. So it's unsurprising that *Heller* thought that the National Firearms Act was constitutional—that law only regulated machineguns, it didn't ban them. But whatever *Heller* thought of registration and taxing rules tells us little about whether Congress can prohibit possession entirely.

*Id.* at 27.

In addition, both circuit courts limit their consideration of the lawful purposes for which one may properly possess a firearm to self-defense. This limitation is not required by the Second Amendment or case law discussing it. While the *Heller* decision identified self-defense as an example of a lawful purposes for which one might possess a firearm, it did not state that self-defense was the *only* lawful purpose for possessing a firearm.

While the Second Amendment preserves an individual right to possess weapons for use in self-defense, it is also a "doomsday provision." *Silveria v. Lockyer*,

328 F.3d 567, 570 (Kozinski, J., dissenting). Specifically, the inclusion of the language regarding the necessity of securing a free state references an intent that codification of the right would quell the fear—based on history showing "tyrants had eliminated a militia consisting of all the able-bodied men was not by banning the militia but simply by taking away the people's arms, enabling a select militia or standing army to suppress political opponents"—"that the Federal Government would disarm the people in order to impose rule through a standing army or select militia was pervasive in Antifederalist rhetoric." *Id.* at 598. As a result of the prefatory clause,

> It was understood across the political spectrum that the right helped to secure the ideal of a citizen militia, which might be necessary to oppose an oppressive military force if the constitutional order broke down.

*Id.* at 599. Accordingly, owning weapons for a doomsday scenario is also a lawful purpose. C.D. Michel & Konstadinos Moros, *Restrictions "Our Ancestors Would Have Never Accepted": The Historical Case Against Assault Weapon Bans,"* 24 Wyo. L. Rev. 89, 111 (2024). Since "[t]yranny is not fought with a pocket pistol," *id.* at 112, it is perfectly in line with the Second Amendment's spirit and text to possess a "part" that can convert a handgun to militaristic use in the event it is needed.

## CONCLUSION

As applied to this Defendant and the conduct in which he is alleged to have engaged, 18 U.S.C. 922(o) is unconstitutional.

Respectfully submitted,

Joseph, Hollander & Craft LLC
*Attorneys for Defendant*

By: /s/Christopher M. Joseph
Christopher M. Joseph, #19778
5200 Bob Billings Parkway, Suite 201
Lawrence, Kansas 66049
(785) 856-0143 Phone
(855) 955-1318 Fax
cjoseph@josephhollander.com

CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ Christopher M. Joseph
Christopher M. Joseph